FILED

2010 JUN 15 AM 10: 35

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY:

JOHN M. McCOY III, Cal. Bar No. 166244
Email: mccoyj@sec.gov
SPENCER E. BENDELL, Cal Bar. No. 181220
Email: bendells@sec.gov
LORRAINE B. ECHAVARRIA, Cal. Bar No. 191860
Email: echavarrial@sec.gov
SAM S. PUATHASNANON, Cal. Bar No. 198430
Email: puathasnanons@sec.gov
ROBERT H. CONRRAD, Cal. Bar No. 199498
Email: conrradr@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Michele Wein Layne, Associate Regional Director
John M. McCoy III, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

WESTMOORE MANAGEMENT, LLC; WESTMOORE INVESTMENT, L.P.; WESTMOORE CAPITAL MANAGEMENT, INC.; WESTMOORE CAPITAL, LLC; and MATTHEW R. JENNINGS,

Defendants.

Case No. **SACV10-00849 AG(MLGX)**

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of

the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

2. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district, Defendant Matthew Jennings resides in this district, and Defendants Westmoore Management, LLC ("Westmoore Management"), Westmoore Capital Management, Inc. ("WCM"), Westmoore Investment, L.P. ("Westmoore Investment"), and Westmoore Capital, LLC ("Westmoore Capital") transact or have transacted business in this district.

## SUMMARY

3. This matter involves unregistered securities offerings by numerous issuers controlled directly or indirectly by Matthew Jennings, who used the proceeds to operate an undisclosed Ponzi-like scheme. In 2008, Westmoore Management, WCM, Westmoore Investment, Westmoore Capital (collectively, "Westmoore") and its subsidiaries raised more than $53 million, of which at least $8.7 million was paid to existing investors, in the form of stock, membership units, and promissory notes. Several of these offerings promised exorbitant short-term returns, as high as 130% annually.

4. Defendants relied upon a structure that centralized management and accounting functions around Westmoore Management. Although Westmoore had been operating since 2000, beginning in mid-2008, its accountants warned Matthew Jennings, Westmoore's principal, that the business was unsustainable because its operations did not produce sufficient revenue to cover the high returns promised to

investors. Nonetheless, at Jennings' direction, the accounting department operated a corporate shell game, treating the various Westmoore bank accounts as one integrated account from which funds, regardless of their source, could be used to pay promised returns to investors.

5. In 2008, Westmoore misrepresented its offerings to raise money from potential investors in order to sustain the scheme. Defendants accomplished this by (1) promising high periodic returns, as much as 130% annually, (2) lying about their use of offering proceeds, and (3) misleading investors about the performance of their investments and Westmoore's businesses. At no point did Westmoore disclose to investors that the investors' returns depended on Westmoore's receipt of funds from new investors or the fact that Jennings diverted money for his own benefit.

6. Recently, Defendants have evidenced their intent to further dissipate assets and imperil investor interests. In March 2010, Jennings sent an email to investors presenting three choices regarding the payout or conversion to equity of their investment principal. Those investors who wish to receive their money back are promised "front-of-the-line preference" during prepayment only if they agree to forfeit a portion of their accrued interest or return. Those investors who wish to receive all of their money back are told that they will have to wait to be paid. Alternatively, investors are asked to convert their interests into equity with a promise that they will "share 50% of the upside." Jennings also offered his personal opinion that the Westmoore holdings have "significant upside", which "would allow investors to capitalize on recent and future success."

7. The Defendants have violated and are violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S. C. §§ 77e(a) and 77e(c), Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. By this action, the Commission seeks a temporary restraining order and preliminary and permanent injunctions prohibiting such future violations as to all Defendants;

appointment of a receiver over Defendants Westmoore Management, WCM, Westmoore Investment, and Westmoore Capital; an order freezing the assets of all Defendants; an order requiring accountings from all Defendants; and an order prohibiting the destruction of documents by all Defendants. The Commission also seeks an order against all Defendants requiring disgorgement of ill-gotten gains, with prejudgment interest thereon, obtained by them and civil penalties.

## THE DEFENDANTS

8. **Matthew R. Jennings**, age 39, resides in Yorba Linda, California and is CEO of Westmoore Management, LLC; CEO of Westmoore Capital Management, Inc.; president of Westmoore Partners, Inc., the general partner of Westmoore Investment, L.P.; and CEO and director of Westmoore Capital, LLC. Jennings holds Series 4, 7, 24, 27, 63, and 65 licenses with FINRA.

9. **Westmoore Capital, LLC** is a California limited liability company organized in 2006 and based in Anaheim Hills, California. The company holds ownership interests in and manages several companies in the Westmoore family.

10. **Westmoore Capital Management, Inc.** is a suspended California corporation formed in 2006 and based in Anaheim Hills, California. The company purportedly sought to become an alternative asset manager and advisory firm, but never did. No registration statement has been filed with the Commission or has been in effect with respect to the securities offerings by WCM alleged in this Complaint.

11. **Westmoore Investment, L.P.** is a California limited liability company formed in 2000 and based in Anaheim Hills, California. The company holds ownership interests in several companies in the Westmoore family. Westmoore Investment's general partner is Westmoore Partners, Inc. No registration statement has been filed with the Commission or has been in effect with respect to the securities offerings by Westmoore Investment alleged in this Complaint.

12. **Westmoore Management, LLC**, is an active California limited liability company formed in 2003 and based in Anaheim Hills, California. It provides administrative, operational, management, and accounting functions for other companies in the Westmoore family. No registration statement has been filed with the Commission or has been in effect with respect to the securities offerings by Westmoore Management alleged in this Complaint.

## THE FRAUDULENT SCHEME

13. Westmoore operated real businesses through numerous subsidiaries and related entities – such as restaurants, residential property rentals, and loans to small businesses and individuals—that generated revenues from operations

14. In 2008, however, Westmoore's businesses did not generate enough revenue to support promised returns to investors and several businesses lost significant amounts of money. The only way to continue paying promised returns to existing investors was to raise new investor capital and use that money to pay old investors. Consequently, many of these entities raised money in 2008 through offerings of equity, membership units, and promissory notes sold by Westmoore Securities. In all, Westmoore paid at least $8.7 million of new investor funds to existing investors in 2008.

### A. Westmoore's Centralized Structure And Accounting Practices Facilitated The Scheme

15. As an officer, director, and/or owner of nearly all Westmoore entities Jennings managed the entire Westmoore enterprise. As such, he had ultimate authority over the various Westmoore entity bank accounts, including approving payments of principal and interest to investors and fund transfers.

16. Westmoore Management formed the hub of the Westmoore scheme. The company's accounting department provided management and accounting services for almost all of the Westmoore entities. Those accounting functions included, among other things, monitoring the daily activity in, and balance of, each

entity's bank account, issuing checks to investors or vendors, moving funds among the Westmoore bank accounts, and preparing monthly financial statements for Westmoore. Jennings used a daily accounting report summarizing balances in the various Westmoore bank accounts to determine whether and when to transfer or pay out funds.

## B. Westmoore's Businesses Failed To Generate Sufficient Revenues To Pay Investors Their Promised Returns

17. Throughout 2008, because at least 70% to 75% of funds deposited with Westmoore were from investors and not revenue from business operations, Westmoore did not generate sufficient revenue to pay the interest and principal due to investors.

18. The Westmoore accounting department's general practice was to deposit funds from investors in, and disburse funds to investors from, the bank account of the entity offering the investment. In 2008, however, Westmoore accounts regularly had insufficient funds to cover checks issued to investors for principal or interest payments. Under those circumstances, Jennings instructed the accounting department to locate cash in the bank accounts of other Westmoore entities and transfer the necessary funds to the bank account with insufficient funds. In cases where the accounting department could not identify sufficient funds to cover the checks, Jennings directed the accounting department to consult with him so that he could decide which, if any, of the issued checks to cover and from which accounts to transfer the available funds.

19. Neither Jennings nor the accounting department had any regard for the source of funds that were transferred. Indeed, Jennings and the accounting department treated the various Westmoore accounts as one integrated account from which funds, regardless of their source, could be transferred and used as necessary to make various payments, including investors' principal and interest.

20. By the last three months of 2008, "almost all" of the funds being

deposited into Westmoore accounts were from investors, as opposed to revenue from business operations. Moreover, by October 2008, Westmoore increasingly bounced interest and principal checks to investors because it received fewer new investor dollars that it could use to pay existing investors. In 2008, Westmoore received over $53 million of new money from investors, of which at least $8.7 million was used to pay the principal and returns of old investors.

### C. Jennings Knew That New Investor Funds Were Used To Pay Existing Investors

21. Jennings knew in 2008 that investor funds were used to pay the interest and principal payments of existing investors because he controlled Westmoore and the movements of funds within it. Specifically, Jennings approved transfers of new investor funds from one Westmoore entity bank account to another account to cover interest and principal payments.

22. Beginning in mid-2008, some of Westmoore's accountants related their concern to Jennings that Westmoore's business was unsustainable. Those accountants had grown worried that the high interest rates – as much as 5% every two weeks – Westmoore had promised to pay investors coupled with the large notes payable balance (i.e., the overall amount of principal owed to investors) would require Westmoore to make exorbitant monthly interest payments that it could not afford. Each time, Jennings dismissed the accountants' concerns because Westmoore had an investment in a Chinese wireless telecommunications business that would provide substantial revenues.

23. In the fall of 2008, Westmoore's accounting manager told Jennings that the high interest rates Westmoore was paying investors, Westmoore's large notes payable balance, and the fact that registered representatives offering and selling Westmoore's investments were taking commissions when investors extended the term or rolled over their investments (and not just for new investments) meant that Westmoore would run out of money unless it continued to

receive new investment dollars. Jennings also dismissed these concerns and stated that Westmoore had investments in the works. The accounting manager subsequently provided Jennings with a spreadsheet reflecting that Westmoore's note payable balance was approximately $50 million. He also provided Jennings with an analysis reflecting a deficit of at least $1,000,000 over the previous three-month period created by the amounts Westmoore had paid out compared to the smaller amounts it had brought in from all sources.

24. The following transaction illustrates Jennings' control over, and knowledge of, Westmoore's bank accounts and its use of new investor funds to pay old investors. On November 10, 2008, pursuant to a request dated November 5, 2008, the accounting department issued a $196,700 payment of principal and interest to an investor in Westmoore Capital Group, Series A, a subsidiary of Westmoore Management. Jennings directly authorized this payment because he knew of an incoming wire "that should cover all [sic]." In fact, Jennings funded that payment with proceeds from new investors in two other Westmoore offerings: a wire transfer of $175,000 to WCM and a $100,000 check to Westmoore Lending Opportunity Fund, a subsidiary of Westmoore Capital, Inc. Once these funds were deposited in the respective bank accounts for WCM (which used Westmoore Capital's bank account) and Westmoore Lending Opportunity Fund, nearly all of the money was then transferred to Westmoore Management's bank account. That account, which had an opening balance of -$15,218.37, went to a balance of approximately $258,781.63. Then, Westmoore transferred $197,000 of that balance to the Westmoore Capital Group, Series A bank account, which had an opening balance of $94.17. This transfer, funded almost entirely through offering proceeds received from new investors in other offerings, funded the principal and interest payment to the investor cashing out his investment.

**D. Defendants Misrepresented The Offerings To Raise Money To Sustain The Scheme**

25. In 2008, Westmoore and its subsidiaries raised funds through unregistered offerings of stock, membership units, and promissory notes (collectively, the "Westmoore Offerings"). The offerings were created at Jennings' direction. He approved each of the offering documents before they were finalized. He also conducted sales meetings with or sent emails to the registered representatives who offered and sold Westmoore's investments to inform them about the terms of the offerings, the performance of the entities, and other information that the representatives would then communicate to prospective investors.

26. Registered representatives typically told investors that Westmoore's business was to identify and invest in growth companies. The representatives stated that the offerings were good investments because the owners, and many representatives, invested their own money in the offerings and Westmoore had a track record of success. Neither the registered representatives nor the offering materials disclosed to investors that Westmoore would use new investor funds to pay the returns of existing investors.

27. The various Westmoore Offerings shared certain characteristics: high periodic returns, false and inadequate representations about the use of proceeds, and misleading representations regarding the performance of Westmoore's businesses.

**1. Defendants Promised High Periodic Returns**

28. Westmoore and Jennings created offerings that promised exorbitant short-term returns, which created added pressure on them to sustain the scheme. Investors were promised the following returns:

- WCM: two note offerings, one which paid 5% interest for each two-week term (140% annually) and another which offered a 10% return

for each 60-day term (over 60% annually). WCM also issued two stock offerings both of which promised a 10% annual return plus a pro-rata share of 50% of net income, paid quarterly, on investors' equity investment.

- Westmoore Investment: one note offering that paid a 3.33% monthly return (40% annually) over a 90-day term.
- Westmoore Management: two note offerings, one which paid 7% every two weeks (91% annually) over a 90-day term and another which paid a 10% annual return paid quarterly.

**2. Defendants Falsely Represented The Use Of Offering Proceeds**

29. Westmoore created private placement memoranda ("PPMs") for distribution to new and prospective investors. These PPMs included, among other things, the following disclosures regarding the use of offering proceeds:

- WCM (equity offerings): "for general purposes to implement [the company's] plan to become a leading alternative asset manager that also provides advisory services to a global clientele."
- WCM (note offering): "provide working capital and development costs, to finance the legal and other costs associated with operations of Westmoore Capital Management, Inc." WCM never began operations.
- Westmoore Investment: "provide working capital, development costs, and finance the legal and other costs" related to a merger in which Westmoore Investment had a financial interest. The merger was not completed.
- Westmoore Management: "provide working capital and development costs, to finance the legal and other costs associated with the operations of Montana Legend, and to acquire controlling interest in a publicly traded entity." Montana Legend was an entity managed by

Westmoore Management that produced organic beef products and ultimately ran out of funding in 2008.

30. The PPMs failed to disclose that Westmoore would use offering proceeds to pay the returns of existing investors.

31. Moreover, in connection with the WCM note offerings, some investors received false oral representations about the use of the offering proceeds. Jennings and at least one registered representative told investors that the WCM offering would be used to fund a bridge loan to assist a third-party communications provider launch a new wireless internet project. These representations were false because Jennings and Westmoore diverted the WCM offering proceeds to pay existing investors in other Westmoore offerings.

### 3. Investors Were Misled About The Actual Performance Of Their Investments And Westmoore's Businesses

32. Westmoore did not provide investors with an accurate picture of its business prospects in 2008. Although many of the PPMs included a section entitled 'Risk Factors", these disclosures had little or no value because of Westmoore's failure to disclose the Ponzi-like nature of the investments.

33. Westmoore failed to disclose to investors that certain of its businesses were losing money, failing, or, in the case of WCM, unable to begin operations. Westmoore also did not tell investors that it had to rely on proceeds from new investors to pay existing investors or to fund the operations of other Westmoore entities.

34. As investments matured, Westmoore representatives generally contacted their clients and gave them the option of continuing their investment on the same or better terms or rolling over their investment into a new offering with a different Westmoore entity. Neither option required an investor to provide new funds to Westmoore. Investors, however, were not told about the financial condition of the businesses that they had previously invested in, that certain

businesses had failed, or that businesses were losing money. Westmoore paid commissions to representatives on rollovers of maturing investments even though it did not receive new cash. This created an incentive for representatives to push rollovers. By keeping investors from cashing out, Westmoore could reduce the demand for cash and delay the collapse of the scheme.

**E. Jennings Diverted At Least $300,000 From Westmoore For His Personal Benefit**

35. On several occasions in 2008, Jennings, without disclosure to investors, transferred money from the Westmoore bank accounts into his own personal accounts, totaling over $300,000.

**F. Defendants Intend To Dissipate Investor Funds**

36. In late 2008, Defendants suspended interest and principal payments to investors, leaving a note payable balance of approximately $50 million. As of January 2009, due to the withdrawal of Westmoore Securities' registration with the Commission, the offerings ceased. However, Westmoore and its subsidiaries continue to operate under the "Westmoore" brand, managed by Jennings. Since January 2009, Jennings has periodically sent out "Business Update" e-mails to investors to communicate the status of the companies and the investments. These updates typically announce Westmoore's intentions to restructure, but do not make any commitment about the payment of principal and returns.

37. On March 21, 2010, Jennings sent out an email announcing three options for investors. The first option offered investors "front-of-the-line preference" during repayment in exchange for their agreement to significantly reduce their accrued interest or return. The second option promised investors the full amount of principal and interest, but only after the first group has been paid. The last option would permit investors to "share 50% of the upside" of the sale of Westmoore's holdings. Jennings offered his personal opinion that choosing this option "would allow investors to capitalize on recent and future success."

**FIRST CLAIM FOR RELIEF**

**UNREGISTERED OFFER AND SALE OF SECURITIES**

**Violations of Sections 5(a) and 5(c) of the Securities Act**

**(Against Jennings, Westmoore Management, WCM, and Westmoore Investment)**

38. The Commission realleges and incorporates by reference paragraphs 1 through 37 above.

39. Jennings, Westmoore Management, WCM, and Westmoore Investment, and each of them, by engaging in the conduct described above, directly or indirectly, made use of means or instrumentalities of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or delivery after sale.

40. No registration statement has been filed with the Commission or has been in effect with respect to the offerings alleged herein. By engaging in the conduct described above, each of the Defendants violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

**SECOND CLAIM FOR RELIEF**

**FRAUD IN THE OFFER OR SALE OF SECURITIES**

**Violations of Section 17(a) of the Securities Act**

**(Against All Defendants)**

41. The Commission realleges and incorporates by reference paragraphs 1 through 37 above.

42. All Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

(a) with scienter, employed devices, schemes, or artifices to defraud;

(b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

43. By engaging in the conduct described above, all Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

**THIRD CLAIM FOR RELIEF**

**FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

**(Against All Defendants)**

44. The Commission realleges and incorporates by reference paragraphs 1 through 37 above.

45. All Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

(a) employed devices, schemes, or artifices to defraud;

(b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

46. By engaging in the conduct described above, all Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that all Defendants committed the alleged violations.

**II.**

Issue judgments, in forms consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining the Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a), 5(c), and 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**III.**

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of all Defendants, and any entity affiliated with any of them, appointing a receiver over Defendants Westmoore Management, WCM, Westmoore Investment, and Westmoore Capital, requiring accountings from all Defendants, and prohibiting all Defendants from destroying documents.

**IV.**

Order all Defendants to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

**V.**

Order all Defendants to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

**VI.**

Enter an order, pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), prohibiting defendant Jennings from acting as an officer or a director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d).

**VII.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VIII.**

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: June 15, 2010

Sam S. Puathasnanon
Attorney for Plaintiff
Securities and Exchange Commission

John M. McCoy III, Cal. Bar No. 166244
Spencer E. Bendell, Cal. Bar No. 181220
Sam S. Puathasnanon, Cal. Bar No. 198430
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>PLAINTIFF(S)<br>v.<br><br>WESTMOORE MANAGEMENT, LLC; WESTMOORE INVESTMENT, L.P.; WESTMOORE CAPITAL MANAGEMENT, INC.; WESTMOORE CAPITAL, LLC; and MATTHEW R. JENNINGS<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV10-00849 AG(MLGX)**<br><br>**SUMMONS** |

TO: DEFENDANT(S): ____________________________________________

____________________________________________

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ____________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, John M. McCoy III/Sam S. Puathasnanon, whose address is ____________________________________________. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JUN 15 2010

By: NANCY CASTRO SEAL
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
WESTMOORE MANAGEMENT, LLC; WESTMOORE INVESTMENT, L.P.; WESTMOORE CAPITAL MANAGEMENT, INC.; WESTMOORE CAPITAL, LLC; and MATTHEW R. JENNINGS

Orange County

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

John M. McCoy III and/or Sam S. Puathasnanon (323) 965-3998
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor, Los Angeles, CA 90036

Attorneys (If Known)

Irving M. Einhorn (310) 798-7216
Law Office of Irving M. Einhorn
1710 10th Street
Manhattan Beach, CA 90266

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only**
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ **MONEY DEMANDED IN COMPLAINT: $**__________

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
The Complaint alleges violations of the federal securities laws. 15 U.S.C. §§ 77e(a), 77e(c) & 77q(a); 15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b-5 thereunder.

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☑ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: **SACV10-00849 AG(MLGX)**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): ______

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): ______

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☑ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Westmoore Management, LLC - Orange County; Westmoore Investment, L.P. - Orange County; Westmoore Capital Management, Inc. - Orange County; Westmoore Capital, LLC - Orange County; and Matthew R. Jennings - Orange County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** 6/14/2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

**SACV10- 849 AG (MLGx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[X] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.