JOHN N. TEDFORD IV (State Bar No. 205537)
jtedford@dgdk.com
KEVIN D. MEEK, (State Bar No. 280562)
kmeek@dgdk.com
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for David A. Gill, Receiver

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ,<br><br>Plaintiff,<br><br>vs.<br><br>WESTMOORE MANAGEMENT, LLC; WESTMOORE INVESTMENT, LP.; WESTMOORE CAPITAL MANAGEMENT, INC.; WESTMOORE CAPITAL, LLC; and MATTHEW R. JENNINGS, ,<br><br>Defendants. | Case No. 8:10-cv-00849-AG (MLGx)<br><br>**RECEIVER'S FIFTH REPORT AND ACCOUNT**<br><br>Date: September 15, 2014<br>Time: 9:00 a.m.<br>Place: Courtroom 10D<br>411 West Fourth Street<br>Santa Ana, California |

David A. Gill, as the permanent receiver (the "Receiver") for defendants Westmoore Management, LLC, Westmoore Investment, L.P., Westmoore Capital Management, Inc., Westmoore Capital, LLC, and their subsidiaries and entities otherwise majority-owned, managed or controlled, directly or indirectly, but any of them (collectively "Westmoore" or the "Westmoore Entities"), respectfully submits his Fifth Report and Account pursuant to the *Judgment of Permanent Injunction, Appointment of Permanent Receiver, and Imposing Other Relief As to Defendants Westmoore Management, LLC; Westmoore Investment, L.P.; Westmoore Capital*

*Management, Inc.; and Westmoore Capital, LLC* (the "Judgment") entered on August 12, 2011 (*docket entry no. 83*) and Local Rule 66-6.1.

## I.
## INTRODUCTION

On October 21, 2011, May 7, 2012, November 15, 2012, and October 7, 2013, I filed my first four status reports in this case (*docket entry nos. 94, 115, 132 and 162*). This document is my fifth report and account of receipts and disbursements as Receiver for the Westmoore Entities. This report covers the period from July 1, 2013, through August 31, 2014 (the "Current Period").

## II.
## RECEIVER'S REPORT RE: ACTIVITIES
## DURING THE CURRENT PERIOD

### A. STATUS OF JUDGMENT AGAINST MATTHEW JENNINGS

1. On August 12, 2011, the Court entered its *Final Judgment as to Defendant Matthew R. Jennings* pursuant to which, among other things, Mr. Jennings was required to pay the sum of $492,265.06 to me on or before October 11, 2011.

2. I have received a total of $244,926.57 from Mr. Jennings on account of the judgment against him, all of which was received prior to the Current Period. As of August 31, 2014, the amount owed by Mr. Jennings was $248,514.66.

3. On January 14, 2013, Mr. Jennings filed for Chapter 13 bankruptcy.[1] On or about March 18, 2013, Mr. Jennings converted his case to Chapter 7. During his case I filed a proof of claim, in the amount of "at least $53,250,000," representing

---
[1] Mr. Jennings' case number is 8:13-bk-10359-TA.

RECEIVER'S FIFTH REPORT AND ACCOUNT

the amount sought by me in a lawsuit filed by me against Mr. Jennings and others (discussed below).[2] On May 7, 2014, Mr. Jennings' bankruptcy was dismissed.[3]

B. **RECEIPTS AND DISBURSEMENTS; CASH ON HAND**

4. Attached as Exhibit "1" to this report is an accounting report which we have modeled after the SEC's Standardized Fund Accounting Report.

5. Without limiting the detail in the exhibit, as of August 31, 2014, I was holding $240,706.16 in cash, all of which I believe to be unencumbered. This figure includes a $10,000 deposit that was paid by a settling party pending approval of my settlement with him (discussed below).[4]

6. Receipts during the Current Period consisted primarily of litigation recoveries. Disbursements during the Current Period consisted of payments to my professionals to me on account of previously approved fees and costs, and payments relating to document storage fees and bank charges.

C. **NO ESTIMATE RE: TIMING AND AMOUNT OF DISTRIBUTIONS TO CREDITORS, IF ANY**

7. As I have previously reported, whether there will ever be sufficient funds in the Receivership Estate to make a distribution to creditors, and the amount of any distribution(s), is still speculative. As of August 31, 2014, my understanding is that the aggregate unpaid fees and costs incurred by me and my professionals were

---

[2] The judgment against Mr. Jennings in this case is in favor of the SEC.

[3] Mr. Jennings and I stipulated multiple times to extend the time for me to file a complaint for a determination that his debt is nondischargeable. Due to the dismissal of his bankruptcy case, there is no longer any need to file such a complaint and incur the cost of such litigation.

[4] After August 31, 2014, I received a settlement payment of $500,000 from a former investor I sued to recover "net winnings." As a result of that and one other deposit, as of the date of filing of this report, I am holding $765,394.74 in cash.

approximately $150,000 more than the cash then on hand plus the aggregate amount of payments I expect to be received by me under settlements I have reached thus far with investors, employees and borrowers. Most likely, funds available to pay unsecured creditors ultimately will be additional recoveries from litigation against third parties. In that regard:

  (a) In late 2012 and early 2013, I filed lawsuits against more than sixty defendants. A detailed description of these lawsuits is provided below. I have reached settlements or dismissed my claims against most defendants, but there are a few still pending. I expect that most of these will be resolved by settlement, or by entry of summary or default judgment. Collection of such judgments is speculative.

  (b) There are four related defendants from whom I am seeking, collectively, millions of dollars. Mediation with these defendants will take place in October 2014. Absent settlement or entry of summary judgment, these claims will be resolved at trial. If I am successful in asserting these claims, and if I am able to collect on the judgments, it appears that a distribution to general unsecured creditors will be possible.

  (c) In July 2013, this Court approved a settlement between me and certain former investors, arising out of litigation then pending in the United States Bankruptcy Court for the Eastern District of Washington. To date, the Receivership Estate has received approximately $86,000 under that settlement. Depending on the outcome of an appeal, the Estate may receive up to an additional $219,375.

  8. Before any distributions may be made, income taxes must be resolved and paid.[5] Based on my accountants' discussions with the IRS, among other things, it appears that at least three of the Westmoore Entities are (or are treated as) "C"

---

[5] A receiver may be held personally liable for taxes owed to governmental units by the receivership estate or the receivership entities, even with respect to pre-receivership periods, if the receiver pays creditors that rank junior in priority to the government instead of paying the government's senior claims. 31 U.S.C. § 3713.

1225883.1 25713A

4

RECEIVER'S FIFTH REPORT AND ACCOUNT

corporations for federal income tax purposes, but last filed tax returns for 2007.[6] The amount of time and expense that my accountants will incur having to review (and potentially recreate from bank records and other sources) Westmoore's books and records, and to prepare tax returns, will be significant. Because of the lack of funds currently in the Receivership Estate, and because of the uncertainty that the Estate will ever have sufficient funds to distribute to unsecured creditors, I have instructed my accountants to prepare tax returns only for the Receivership Estate (*i.e.*, for the period after my appointment) at this time.

9. Claimants should be aware that, if there are funds available to distribute, distributions likely will be made only after, among other things, (a) the Court rules whether some or all of the Westmoore Entities should be consolidated for purposes of distribution, (b) the Court rules whether trade creditors should have priority over investors, (c) the Court rules whether "creditor" investors should have priority over "equity" investors, and (d) a process is completed in which claimants submit written proofs of claim to me or a claims agent, and I have an opportunity to review and object to such claims. Due to the lack of available funds and uncertain prospects of any recovery, I have not asked the Court for such rulings or to initiate the claims process. I do not anticipate that distributions, if any, will be made in the near future.

### D. RECEIVER'S PROPOSED SALE OF WESTMOORE'S OWNERSHIP INTEREST IN MHS CAPITAL

10. One of the Westmoore entities holds a limited partnership interest in MHS Capital Partners, L.P. ("MHS"), which appears to constitute approximately 2-3% of MHS' total partnership interests. Subject to Court approval, I have agreed to sell the Westmoore entity's interest to MHS for $88,390.50.

---

[6] It appears that the last year Westmoore filed returns for any Westmoore Entity was for 2007, and returns were last filed for some Westmoore Entities for 2006.

11. As previously reported by me, various investors or other creditors claim to have security interests in some of Westmoore's assets. As to the MHS ownership interests, the Chapter 7 Trustee for the bankruptcy estate of GM Funding, LLC ("GM Funding"), claims to have a first-priority security interest. I dispute that the trustee has such an interest. However, since the Westmoore entities' records indicate they collectively owe GM Funding over $4 million, Westmoore's interest in MHS has no value to the Receivership Estate if the lien is valid and enforceable. Subject to the approval of this Court and the bankruptcy court, the trustee and I have agreed to a settlement pursuant to which I will pay GM Funding's bankruptcy estate $10,000 of the $88,390.50 sale price.

12. On September 9, 2014, the bankruptcy court in GM Funding's case entered an order granting the trustee's motion for approval of the settlement. As a result, that condition has been satisfied.

13. On August 14, 2014, I filed a motion for authority to sell Westmoore's MHS interests free and clear of all liens and encumbrances, and for approval of my settlement with GM Funding's trustee. No opposition to my motion has been filed. If the motion is granted that the transactions close, the Receivership Estate will receive $78,390.50 in free and clear funds.

E. **LAWSUITS FILED BY RECEIVER**

14. In 2012, I retained Castillo Snyder as my special litigation counsel to investigate and assert certain types of claims. Through special counsel, I filed three lawsuits against more than sixty defendants, and a fourth lawsuit against one of Westmoore's former professionals.

15. I have entered into settlements with approximately 22 defendants. The gross amount to be received by the Estate under those settlements is approximately $1.02 million.

### Lawsuit against Former Employees

16. My first lawsuit was filed against Matthew Jennings and certain others who were brokers or employees or were otherwise affiliated with Westmoore.[7] In this lawsuit, I am seeking, among other things, to recoup funds transferred to the defendants from and after 2007, to collect debts owed under promissory notes or similar accounts, and damages caused by their marketing and sale of investment products. With regard to this lawsuit:

(a) I settled with three defendants pursuant to agreements under which the Estate has received aggregate gross settlement proceeds of $47,000 and releases of any and all claims the settling defendants had or may have had against the Estate. Some of these defendants also agreed to cooperate with me and my attorneys in connection with my investigation and pursuit of other claims.

(b) I settled with four defendants pursuant to agreements under which they released any and all claims they had or may have had against the Estate.[8] These defendants also agreed to cooperate with me and my attorneys in connection with my investigation and pursuit of other claims.

(c) Subject to the approval of this Court, I have reached an agreement with Matthew Jennings pursuant to which a sizeable judgment will be entered against him, and he will cooperate with me in connection with my investigation and pursuit of other claims. A motion for approval of this settlement likely will be filed within the next sixty days.

(d) I agreed to dismiss the complaint as to Robert Jennings without prejudice, with a tolling agreement. I ultimately did not re-file claims against him.

---

[7] *Gill v. Jennings*, case no. SACV 12-2235-AG.
[8] My settlements with two of these defendants remain subject to Court approval. I anticipate filing a settlement notice or notices within the next few weeks.

(e) At this time, this action remains pending against one defendant (other than Matthew Jennings) with whom I have not yet settled. Before settling with this defendant in exchange for mutual releases and cooperation, my attorneys must investigate certain facts that appear to be unique to this defendant.

17. On August 8, 2014, the Court approved a stipulation continuing dates and deadlines. The discovery cut-off date is January 23, 2015, the pretrial conference is scheduled for April 20, 2015, and trial is scheduled to commence on May 12, 2015.

### Lawsuit against Borrowers

18. My second lawsuit was filed primarily to collect from certain persons and entities who borrowed money from Westmoore, directly or indirectly, but did not repay Westmoore.[9] Certain investors also were defendants in this action. With regard to this lawsuit:

(a) On June 30, 2014, I filed a motion for summary judgment against a certain former investor who received repayments in 2009 in the form of China Tel common stock; I alleged that the defendant was a "net winner" and was liable to the Estate for at least its net winnings. The defendant also filed a motion for summary judgment, asserting that it had a full defense to my claims. After mediation, I settled with this defendant for $500,000 (an amount in excess of its net winnings) and a release of any and all claims it had or may have had against the Estate. The settlement has recently been approved in accordance with the Court's settlement procedures adopted in this case. Payment was received on September 5, 2014, and the lawsuit has been or will be dismissed as to that defendant.

---

[9] *Gill v. Active Resources*, case no. SACV 12-2236-AG.

(b) On June 30, 2014, I filed another motion for summary judgment against another defendant, Paul Bickford. I am requesting entry of judgment in the amount of $432,611.49, plus interest from July 28, 2014, through the date on which the judgment is entered. My motion is unopposed. A hearing on my motion is set for September 15, 2014.

(c) I settled with two defendants where (i) the settlements have been approved in accordance with the Court's settlement procedures adopted in this case, and (ii) the defendants satisfied their payment obligations. The Estate received aggregate gross settlement proceeds of $95,000 and releases of any and all claims the settling defendants had or may have had against the Estate.

(d) I settled with one defendant where (i) the settlement has been approved in accordance with the Court's settlement procedures adopted in this case, and (ii) the defendant has not yet fully satisfied his payment obligations. The Estate will receive aggregate gross settlement proceeds of $27,000 and releases of any and all claims the settling defendant had or may have had against the Estate. To date, $10,000 of the $27,000 has been paid.

(e) Defaults were entered against seven defendants. In January 2014, I filed motions for entry of default judgments against six of them. Because certain aspects of my claims against these defendants are similar to aspects of my claims against other defendants, the Court denied my motions without prejudice. The Court authorized me to re-file the motions when appropriate. The aggregate amount of the judgments sought by me against the six defendants is in excess of $4 million, but it is uncertain that I would be able to collect anything from these defendants.

(f) The lawsuit remains pending against one defendant who has provided financial documents demonstrating her inability to pay any judgment. She also purportedly did not execute the promissory note upon which my claim is based. Based solely on her inability to pay, I intend to agree to a settlement under which the defendant releases any and all claims she has or may have against the Estate.

1225883.1 25713A

9

RECEIVER'S FIFTH REPORT AND ACCOUNT

(g)     The lawsuit remains pending against another defendant who played in the National Basketball Association, but who has not been served with the summons and complaint. It appears that when I filed my lawsuit, the defendant was affiliated with the Toronto Raptors. Since mid-2013, he has been playing in Europe. The amount of my claim against the defendant ($206,000) does not appear to warrant the time and expense of serving him in accordance with the Hague Convention.

(h)     The lawsuit remains pending against another defendant where it is not clear whether the named defendant has been properly served. An individual with the defendant's name was served, but he claims to have never heard of Westmoore. In light of facts uncovered during the course of my investigation, it may be that this person is in fact the correct person. My attorneys are investigating further before pursuing my claims against this defendant.

(i)     The lawsuit remains pending against another defendant who filed for bankruptcy in October 2013. Although the defendant received a discharge, the bankruptcy case has not yet concluded. The automatic stay remains in effect as to this defendant.

(j)     The lawsuit remains pending against one corporate defendant we could not serve. According to media reports, the defendant's principal (and agent for service of process) was indicted and arrested in May 2013 on charges of defrauding the corporate defendant's investors. In mid-August 2014, the principal pled guilty to two counts of mail fraud and a sentencing hearing is scheduled for October 2014.

(k)     The lawsuit remains pending against another corporate defendant who does not appear to be conducting any business. My attorneys are investigating whether to request entry of default, or dismiss the lawsuit, as to this defendant.

(l)     I dismissed the lawsuit against four corporate defendants who appear to be defunct (including one that had filed for Chapter 7 bankruptcy), and one individual defendant who also had filed for bankruptcy. I also dismissed a defendant

who provided evidence after I filed the complaint that the payment it received related to a purchase by Westmoore of stock in a third party entity.

(m) Finally, I dismissed the lawsuit without prejudice as against the entity formerly known as China Tel Group, Inc., and four other persons and entities related thereto. At the same time, I entered into a tolling agreement under which I am permitted to re-file the claims against these defendants on or before September 19, 2014. My investigation of these potential claims is ongoing.

19. On July 24, 2014, the Court revised it scheduling order in this lawsuit. A pretrial conference is currently scheduled for October 6, 2014, and trial is currently scheduled to commence on October 20, 2014. In light of the settlements and motion for summary judgment described above, I anticipate that I will request that the Court vacate the pretrial conference and trial dates, and schedule a new case management conference at which my counsel can address the Court regarding the remaining defendants.

### *Lawsuit against Investors to Recover "Net Winnings"*

20. My third lawsuit was filed against certain former investors who are "net winners" because the amounts they received from Westmoore exceeded the amounts they invested.[10]

(a) I settled with three defendants where (i) the settlements have been approved in accordance with the Court's settlement procedures adopted in this case, and (ii) the defendants have satisfied their payment obligations. The Estate received aggregate gross settlement proceeds of $127,500 and releases of any and all claims the settling defendants had or may have had against the Estate.

---

[10] *Gill v. Blessing*, case no. SACV 13-0132-AG.

11
RECEIVER'S FIFTH REPORT AND ACCOUNT

(b) I settled with two defendants where (i) the settlements have been approved in accordance with the Court's settlement procedures adopted in this case, and (ii) the defendants have not yet completed their payment obligations. The Estate will receive aggregate gross settlement proceeds of $165,000 and releases of any and all claims the settling defendants had or may have had against the Estate. To date, $60,000 of the $165,000 has been paid.

(c) I settled with four defendants where settlement notices have been filed in accordance with the Court's settlement procedures adopted in this case, but the objection period has not yet run. Assuming these settlements are approved, the Estate will receive aggregate gross settlement proceeds of $140,000 and releases of any and all claims the settling defendants had or may have had against the Estate.

(d) After reviewing documents relating to their financial condition, I settled with two defendants pursuant to agreements under which they released any and all claims they had or may have had against the Estate. Under the settlements, these defendants also agreed to cooperate with me and my attorneys in connection with my investigation and pursuit of other claims.

(e) Defaults were entered against two defendants. In January 2014, I filed motions for entry of default judgments. Because certain aspects of my claims against these defendants are similar to aspects of my claims against other defendants, the Court denied my motions without prejudice. The Court authorized me to re-file the motions when appropriate. The aggregate amount of the judgments sought by me against these two defendants is approximately $411,000 plus interest. It is uncertain that I would be able to collect anything from these defendants.

(f) I dismissed the lawsuit as to six defendants after they provided me information and/or documents after I filed the complaint. Generally, the decision to dismiss these defendants was based on new evidence impacting my evaluation of the merits of my particular claims against each defendant, and in some cases may

have been based on my inability to collect any judgment against those defendants. One of the individual defendants had died.

      (g)    The four remaining non-defaulted defendants are affiliated with one another and are represented by the same counsel. Absent settlement or entry of summary judgment,[11] it appears that my claims against these four defendants will be determined at trial. I am seeking a judgment for multiple millions of dollars against these defendants. I anticipate that a mediation with these defendants will occur in October 2014. Trial is scheduled to commence on November 18, 2014.

### *Lawsuit against Former Professional*

21.    On July 31, 2013, I filed a separate lawsuit against a professional firm that provided legal services to the Westmoore entities, including services related to some of the investments offered through Westmoore Securities. I settled with the firm and its principals pursuant to an agreement under which they agreed to pay a total of $275,000 over a period of time. To date, $185,000 of the $275,000 has been paid.

///
///
///
///
///
///
///
///
///

---

[11] A hearing on the defendants' motion for summary judgment will be held on September 29, 2014.

## III.

## RECOMMENDATION

22. Local Rule 66-6 generally provides for receivers to file status reports every six months."[12] The rules do not require a status conference every six months, but in my experience it is economical and otherwise advisable for the Court to do so. As a result, I recommend that the Court set a further status conference in or about March 2015.

DATED: September 10, 2013        /s/ David A. Gill
                                 DAVID A. GILL, Receiver

**PRESENTED BY:**

DANNING, GILL, DIAMOND & KOLLITZ, LLP


By:   /s/ John N. Tedford IV
      JOHN N. TEDFORD IV
      Attorneys for David A. Gill, Receiver

---

[12] The Court previously relieved the Receiver of his obligation to file status reports every six months.

**EXHIBIT "1"**

ACCOUNTING REPORT for WESTMOORE MANAGEMENT, LLC, ET AL. - Cash Basis
Receivership; Civil Court Docket No. 8:10-cv-00849-AG (MLGx)
Reporting Period: 7/1/13 to 8/31/14

| | | | |
|---|---:|---:|---:|
| **BEGINNING CASH BALANCE (AS OF 7/1/13)** | | | **$370,610.42** |
| **RECEIPTS DURING THE REPORTING PERIOD:** | | | |
| Interest/Dividend Income | | $5,499.62 | |
| Third-Party Litigation / Settlement Income | | | |
| -- Reimbursement of discovery costs | $3,060.00 | | |
| -- Confidential settlement with former professional | $185,000.00 | | |
| -- Confidential settlement with former employee | $35,000.00 | | |
| -- Confidential settlement with former investor | $0.00 | | |
| -- Settlement with Hendricksons (re Wylie) | $50,000.00 | | |
| -- Settlement with Hendricksons (re HW Partners) | $36,270.00 | | |
| -- Settlement with Goodrich | $10,000.00 | | |
| -- Settlement with Blessing / W2 | $100,000.00 | | |
| -- Settlement with Molenaar | $2,000.00 | | |
| -- Settlement with Hernandez / Empire Family | $27,500.00 | | |
| -- Settlement with Linsley | $60,000.00 | | |
| -- Settlement with Olshansky | $10,000.00 | | |
| -- Settlement with Brod | $10,000.00 | | |
| -- Payments re judgment against Matthew Jennings | $0.00 | | |
| | | $528,830.00 | |
| Miscellaneous - Other | | $0.00 | |
| **TOTAL RECEIPTS DURING THE REPORTING PERIOD:** | | | **$534,329.62** |
| **DISBURSEMENTS DURING THE REPORTING PERIOD:** | | | |
| Disbursements to Receiver, professionals & field representative | | | |
| -- Disbursements to Receiver | $10,065.88 | | |
| -- Disbursements to Receiver's general counsel | $205,425.99 | | |
| -- Disbursements to Receiver's tax accountants & advisors | $60,327.53 | | |
| -- Disbursements to Receiver's forensic analyst | $99,180.60 | | |
| -- Disbursements to field representative | $89,030.06 | | |
| | | $464,030.06 | |
| Business Asset and Operating Expenses | | | |
| -- Document storage and retrieval costs | $9,212.92 | | |
| -- Server storage and related costs (direct to vendor) | $2,706.63 | | |
| -- Federal and state income taxes | $1,600.00 | | |
| -- Other | $0.00 | | |
| | | $13,519.55 | |
| Banking and Investment Fees and Expenses | | $5,550.62 | |
| Third-Party Litigation Expenses | | | |
| -- Attorneys' fees (Castillo Snyder) | $73,718.56 | | |
| -- Costs re litigation (to counsel, or direct to vendor) | $18,500.79 | | |
| -- Reimbursement to Joaquin De Teresa | $50,000.00 | | |
| -- Joaquin De Teresa share of confidential settlement | $33,292.30 | | |
| -- Other litigation expenses | $5,622.00 | | |
| | | $181,133.65 | |
| **TOTAL DISBURSEMENT DURING THE REPORTING PERIOD:** | | | **$664,233.88** |
| **ENDING CASH BALANCE (AS OF 8/31/14)** | | | **$240,706.16** |

**PROOF OF SERVICE**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067-4402.

On September 10, 2014, I served true copies of the following document(s) described as **RECEIVER'S FIFTH REPORT AND ACCOUNT** on the interested parties in this action as follows:

☒ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Danning, Gill, Diamond & Kollitz, LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

Parties requesting service of notices by mail

Eleanor M. Egan Living Trust
Attn: Elanor Egan, Trustee
1893 Parkview Circle
Costa Mesa, CA  92627

Physllis Fredericks
3718 Oakview Court
Fallbrook, CA  92028

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 10, 2014, at Los Angeles, California.

/s/Patricia Morris
Patricia Morris

1226558.1  1416376A                                          1